IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael D. Magers,                  Case No. 3:06 CV 1813

         Petitioner,                 MEMORANDUM OPINION
                                          AND ORDER

     -vs-
                                          JUDGE JACK ZOUHARY

Stuart Hudson,

         Respondent.

## INTRODUCTION

*Pro se* Petitioner Michael Magers, a prisoner in state custody, filed a Petition for a Writ of Habeas Corpus in this Court (Doc. No. 1). This Court has jurisdiction under 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Petitioner is in custody and raises constitutional due process claims.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). In her Report and Recommendation (Doc. No. 13), the Magistrate Judge recommended the Court deny the Petition.

This action is before the Court on Petitioner's Objection to the Report and Recommendation (R&R) (Doc. No. 16). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings to which the Petitioner objects. The Court finds the objection is not well-taken and adopts the R&R.

**DISCUSSION**

**Facts and Procedural Background**

As stated in the R&R (at p. 2), Petitioner discovered Billy Martin kissing his wife; Petitioner pursued Martin by car; shot him three times and killed him.

Petitioner was indicted in February 2003 by a Seneca County grand jury and was charged with aggravated murder with a firearm specification. The jury found him guilty of the lesser included offense of murder with a firearm specification in July 2003. The court sentenced Petitioner to fifteen years to life for the murder count and three years for the firearm specification, resulting in a sentence of eighteen years to life.

The conviction was affirmed on appeal. Petitioner later filed a motion to reopen the direct appeal, which was denied. He also filed an unsuccessful motion for relief from judgment in the appellate court. Finally, in March 2006, the Ohio Supreme Court declined to accept jurisdiction over the appeal.

**Petition for Writ of Habeas Corpus**

Petitioner alleges he was denied his constitutional right to effective assistance of counsel when his appellate counsel failed to raise two issues on appeal: (1) the propriety of the trial court's jury instruction on lesser included offenses; and (2) the propriety of the trial court's jury instruction on voluntary manslaughter. Petitioner also argues as a separate ground that he was denied effective assistance of counsel, but this claim is subsumed by his claims regarding the jury instructions, as it merely states that he was denied effective assistance because counsel failed to raise these arguments.

The Magistrate recommended denial of the Petition, finding (1) the jury instruction on lesser included offenses was not an improper "acquittal-first" instruction as Petitioner claims; and (2) the

2

jury instruction on voluntary manslaughter did not improperly define the mens rea element of the crime. Petitioner now objects to these findings, essentially presenting the same arguments he offered in arguments to the Magistrate. The Court has reviewed these issues *de novo* and finds the objection is not well-taken.

**Ineffective Assistance of Counsel**

The R&R correctly states a claim of ineffective assistance of counsel requires deficient performance by counsel that prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "On habeas review, errors on instructions are not reviewable unless they deprive a defendant of constitutional due process. This Court must determine whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process." *Durr v. Mitchell,* 487 F.3d 423, 446 (6th Cir. 2007) (citations omitted) (internal quotation marks omitted).

*Lesser Included Offenses*

The Magistrate concluded the jury instruction was not an improper acquittal-first instruction under Ohio law. *See State v. Coe*, 153 Ohio App. 3d 44, 54 (2003) ("[A] jury instruction does not constitute an improper acquittal-first instruction if the instruction does not require unanimous acquittal on the crime charged before the jury may consider the lesser included offense."). The Court reviews the instructions as a whole to determine whether they were proper. *State v. Madrigal,* 87 Ohio St. 3d 378, 396 (2000) (citing *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).

Petitioner claims the trial court's statement that the jury "must find the defendant not guilty of Murder and then guilty of Voluntary Manslaughter" may have led the jury to believe it must unanimously acquit him of murder before considering voluntary manslaughter, a lesser included offense. To the contrary, in context, this statement explains that if the jury found the state met its

3

burden in showing that Petitioner "purposely caused the death of Billy Martin, but you also find that the defendant proved, by the greater weight of the evidence, that he acted knowingly while under the influence of a sudden passion or in a sudden fit of rage . . . then you must find the defendant not guilty of Murder and then guilty of Voluntary Manslaughter" (Tr. 1583). This instruction on voluntary manslaughter in no way directed the jury to first acquit Petitioner of the greater offense before considering the lesser included offense. The trial court merely explained the elements of the lesser included offense, which necessarily would include a unanimous finding that Petitioner "purposely caused the death of Martin." Indeed, this portion of the instruction clarified the jury's duty to consider the affirmative defense that would lead to a verdict of voluntary manslaughter.

Petitioner also points to the trial court's statement that "if you find the defendant not guilty of Murder, then you must consider the affirmative defense of sudden passion or sudden fit of rage" (Tr. 1589). The trial court made this statement in the context of explaining the verdict form for the homicide charge. The court explained each item, including aggravated murder, murder, and voluntary manslaughter. The explanation was prefaced by the caution that "[n]o inferences are to be drawn from the order in which the Court reads the verdicts" (Tr. 1588). Again, the trial court was explaining to the jury that it must consider the affirmative defense, not that it could only do so after a unanimous acquittal of the two murder charges.

Next, Petitioner cites the portion of the instructions that requires a unanimous verdict of all twelve jurors. The trial court, reading from the verdict form, stated: "It is necessary that all 12 of the jurors agreeing on the verdict, all 12 will sign the verdict form in ink" (Tr. 1589-90). This portion of the instruction simply states that, under Ohio law, a jury verdict in a criminal case must be unanimous and written. "[B]y statute and procedural rule, a jury verdict in a criminal case is required to be

4

unanimous and in writing." *State v. Carmack*, 61 Ohio St. 3d 351 (Ohio Ct. App. 1989); Ohio Criminal Rule 31(A) ("The verdict shall be unanimous. It shall be in writing, signed by all jurors concurring therein . . ."). This instruction does not address lesser included offenses and therefore does not constitute an acquittal-first instruction.

Finally, Petitioner claims the jury's submission of the following question demonstrates it may have interpreted the instructions as requiring an acquittal first: "What do we do if the jury cannot come to a unanimous decision on the defense of sudden passion or sudden fit of rage?" (Tr. 1600). This question, far from indicating the jury thought it could not reach the defense unless it had unanimously acquitted Petitioner of aggravated murder and murder, suggests the jury was considering the affirmative defense and may have been confused regarding how to proceed in case of deadlock on this defense.

Considered as a whole, the instructions did not suggest to the jury that it must unanimously vote to acquit Petitioner of aggravated murder before considering murder or voluntary manslaughter. Therefore, the instructions did not deprive Petitioner of due process and counsel's failure to make this argument on direct appeal did not deprive Petitioner of effective assistance of counsel.

### *Mens Rea Element of Manslaughter Instruction*

The Sixth Circuit has provided a standard of review for federal habeas courts considering claims that the trial court erroneously omitted essential elements of the crime in the jury instructions:

> Under the Due Process Clause of the Fourteenth Amendment, a defendant in a criminal case is protected against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Davis v. United States*, 160 U.S. 469, 487-88, 16 S.Ct. 353, 40 L.Ed. 499 (1895). But the Supreme Court has held that "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder v. United States*, 527 U.S. 1, 9, 119 S.Ct. 1827,

> 144 L.Ed.2d 35 (1999) (emphasis in original). Instead, a defendant's due process rights are implicated only if the omission of an element is not a harmless error. *Id.* at 9-10, 119 S.Ct. 1827; *California v. Roy*, 519 U.S. 2, 4, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (per curiam) (holding that a state trial courts failure to instruct the jury as to an element of the crime of conviction, which was before the Supreme Court on a petition for federal habeas corpus, was subject to harmless-error review). In the context of federal habeas corpus review, the omission of an element is not a harmless error if there is "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"

*Patterson v. Haskins*, 316 F.3d 596, 609 (6th Cir. 2003). The inquiry, then, is not whether the instruction was merely erroneous, but also whether it may have influenced the jury's verdict.

The Magistrate concluded that the jury instructions on manslaughter did not deprive Petitioner of due process because they essentially restated earlier instructions, albeit in a different order. Petitioner objects, arguing the trial court failed to instruct the jury on all the elements of voluntary manslaughter, thereby depriving him of due process by "instructing the jury that it must find that the defendant purposely caused the death of Billy Martin and failing to correctly instruct the jury on the other elements that were required to be found when considering voluntary manslaughter" (Obj. p. 17). The Magistrate correctly interpreted the instructions.

The trial court addressed voluntary manslaughter twice during its instructions to the jury. First, the court defined the affirmative defense of sudden passion or sudden fit of rage: "[T]he defendant claims that at the time of the offense, he acted knowingly while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by Billy Martin that was reasonably sufficient to incite the defendant into using deadly force" (Tr. 1581). This language tracks the statutory definition of voluntary manslaughter. Ohio Revised Code § 2903.30(A) ("No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is

6

reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy."). Petitioner admits this instruction correctly stated the law (Obj. p. 13).

Petitioner claims, however, the trial court's subsequent statements insufficiently explained the affirmative defense and erroneously omitted the element "knowingly cause the death." After providing the general instruction cited above, the trial court proceeded to define several of the terms, including "knowingly." The court instructed (Tr. 1581-82):

> Knowingly means that a person is aware of the existence of the facts, and that his act will probably be of a certain nature. Since you cannot look [sic] the mind of another, knowledge is determined from all facts and circumstances in evidence. You will determine from these facts and circumstances whether there existed at the time in the mind of the defendant, an awareness of the probability that while under the influence of sudden passion or sudden fit of rage, either of which was brought on by serious provocation occasioned by Billy Martin, that it was sufficiently - - sufficient to incite the defendant into using deadly force, that the defendant purposely caused the death of Billy Martin.

Contrary to Petitioner's assertion, the trial court did not omit a necessary element of voluntary manslaughter in giving this instruction. The context of the quoted portion makes clear the trial court was defining the term "knowingly" and tying this element back to the general definition of the defense. *See* Ohio Revised Code § 2901.22 (B) ("A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."). Replacing "knowingly" with "awareness of probability" was not improper because "knowingly" means in part "aware that his conduct will probably." Therefore, this instruction was not prejudicial to Petitioner and appellate counsel did not overlook an argument that deprived Petitioner of his constitutional rights. Viewing this statement in the context of the totality of the instructions, it is clear the trial court did not omit any of the essential elements of the crime.

Finally, Petitioner claims that the jury's request for a better definition of sudden passion or sudden fit of rage and serious provocation (Tr. 1599) demonstrates that the trial court failed to offer proper instructions. However, the trial court referred the jury to the instructions for these definitions, and the record shows the court defined these terms (Tr. 1582). In any event, this request for clarification does not suggest the trial court improperly omitted an essential element of voluntary manslaughter. Petitioner's objection here is also not well-taken.

## CONCLUSION

After conducting a *de novo* review of the portions of the Report and Recommendation objected to by Petitioner, the Magistrate's Report and Recommendation is hereby adopted. The Petition (Doc. No. 1) is dismissed.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this action could not be taken in good faith and that there is no basis on which to issue a certificate of appealability.

IT IS SO ORDERED.

                                                  s/ *Jack Zouhary*
                                                  JACK ZOUHARY
                                                  U. S. DISTRICT JUDGE

                                                  March 27, 2008